UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-61196-CIV-COHN/SELTZER

NORA B. DELVALLE,

    Plaintiff,

v.

OFFICER A. SMITH/6146 and
CITY OF HALLANDALE BEACH,
a political subdivision of the State of Florida,

    Defendant.
_____/

## **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court on Defendant Officer A. Smith's Motion for Summary Judgment [DE 39] ("Motion"). The Court has considered the Motion, Plaintiff Nora B. Delvalle's Response [DE 43], Officer Smith's Reply [DE 47], the record in this case, and is otherwise advised in the premises.

## **I. BACKGROUND**

This case arises out of events relating to Plaintiff Nora B. Delvalle's arrest on July 20, 2008. On that day, at approximately 1:45 a.m., Plaintiff was driving down Hallandale Beach Boulevard when Defendant Officer A. Smith stopped her. Smith Deposition [DE 40-1] at 18:21-25, 19:1-15, 31:24-25, 32:1-7; see also Delvalle Deposition [DE 40-2] at 9:7-18. Officer Smith maintains that he followed Plaintiff for one quarter mile, id. at 19:12, 19:16-17, during which, "on three separate occasions she drifted from her lane of travel over the fog line on the outside," id. at 19:19-22; see also id. at 20:10-12. In his Complaint Affidavit [DE 24-1], Officer Smith wrote that he

observed Plaintiff's vehicle "sw[e]rving within it[s] own lane and on three separate occasions crossing over the solid white line into the bicycle lane." Compl. Aff. at 1; see also Police Report [DE 24-3] at 3.

After stopping Plaintiff, Officer Smith approached her car. Smith Dep. at 20:16. From where he stood, one and a half feet from her window, id. at 21:6-7, he observed that Plaintiff had a "flushed face, glassy eyes, slow, mumbled speech and [an] odor of an alcoholic beverage emitting from her breath," id. at 20:16-19; see also Compl. Aff. at 1. Officer Smith asked Plaintiff to step out of her car. Smith Dep. at 27:23-25. Once Plaintiff was outside the car, Officer Smith could still smell an alcoholic beverage coming from her breath, id. at 29:9-12, and he observed that she had trouble standing, Compl. Aff. at 1, and "swayed as she talked to officers," Police Report at 3. Officer Smith asked Plaintiff to consent to roadside sobriety tests, and she consented. Smith Dep. at 29:15-17; Police Report at 3. Next, he asked if she had any illness or injuries that would keep her from performing the exercises, and she said no. Smith Dep. at 29:17-19; Compl. Aff. at 1; Police Report at 3; Delvalle Dep. at 26:13-15. Officer Smith then began administering the exercises. Smith Dep. at 29:19-20; Compl. Aff. at 1; Police Report at 3.

Officer Smith reports that, in the one-legged stand exercise, Plaintiff hopped, put her foot down, and held her arms out for balance, missing three of the possible four clues that Officer Smith looks for in the exercise. Smith Dep. at 47:22-25, 48:1-3; Compl. Aff. at 1-2; Police Report at 3; see also Delvalle Dep. at 24:20-25, 25:1-2. In the walk and turn exercise, Plaintiff took nine steps heel-to-toe, held her arms out and then completely stopped without turning or walking backwards, as instructed. Smith

Dep. at 30:19-23; Compl. Aff. at 2; Police Report at 3; see also Delvalle Dep. at 25:19-20.  Plaintiff missed her nose at least once out of two attempts on the finger to nose exercise.  Delvalle Dep. at 26:1-3; Compl. Aff. at 2; Police Report at 3.  Based on her performance on the tests and her swerving while driving, Officer Smith arrested Plaintiff for driving under the influence and took her to the Broward Sheriff's Office, Breath Alcohol Testing ("BAT") unit.  Compl. Aff. at 2; Police Report at 3.

At the BAT unit, a Broward Sheriff's Office breath technician observed Plaintiff for 20 minutes, saw that she had a flushed face, her eyes were glassy and red, and her speech was mumbled.  Smith Dep. at 35:13-18; see also DUI/Alcohol Influence Report, Exhibit F to Smith Dep. [DE 24-1 at 87].  The technician also administered performance tests and observed that Plaintiff was swaying and was unable to complete the tests.  See DUI/Alcohol Influence Report; see also Delvalle Dep. at 17:22-25, 18:1-9.

Plaintiff consented to have her breath tested, and the results were .027 and .025, below the legal limit.  Smith Dep. at 36:9-21; Compl. Aff. at 2; Police Report at 3-4.  Plaintiff then agreed to provide a urine sample, and testing on the sample ultimately indicated that drugs were not detected in Plaintiff's urine.  Smith Dep. 37:22-23; Compl. Aff. 2; Police Report at 4; Final Toxicology Report, Exhibit G to Smith Dep. [DE 24-1 at 89].  Thereafter, the Broward County State Attorney's Offices decided to forego prosecuting Plaintiff for driving under the influence.  County Court Disposition Order [DE 24-2].

On May 23, 2011, Plaintiff filed this action against Defendants Officer A. Smith and the City of Hallandale Beach ("the City").  See Complaint [DE 1].  Since then, all claims against the City were dismissed.  See Order Granting in Part and Denying in

3

Part Motion to Dismiss Amended Complaint [DE 30]; Plaintiff's Notice of Intent to Proceed [DE 36]. The only remaining claim is Count I of the Amended Complaint [DE 24], which asserts a claim for malicious prosecution against Officer Smith in his individual capacity pursuant to 42 U.S.C. § 1983. In the instant Motion, Officer Smith seeks summary judgment on this claim.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### III. ANALYSIS

Officer Smith seeks summary judgment on Plaintiff's malicious prosecution claim arguing first, that he had probable cause to arrest her and second, that he has qualified immunity from the claim. Plaintiff responds that disputed facts preclude summary judgment. As discussed below, the Court finds that Officer Smith had probable cause to arrest Plaintiff and that he has qualified immunity from the claim. The Court further finds that there are no genuine disputes as to any material facts, and Officer Smith is entitled to judgment in his favor. Therefore, the Court will grant Officer Smith's Motion.

### A. Probable Cause Bars the Malicious Prosecution Claim

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003), cert denied, 540 U.S. 879 (2003). "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). Florida requires a Plaintiff to prove the following elements in a malicious prosecution claim: "(1) an original judicial proceeding

5

against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." Durkin v. Davis, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002) (citing Burns v. GCC Beverages, Inc., 502 So. 2d 1217 (Fla. 1986)).  The Fourth Amendment prohibits unreasonable seizures, U.S. Const. amend. IV; Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir. 1996), but "[a]n arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest," Wood, 323 F.3d at 878.  Therefore, because the absence of probable cause is a required element for a malicious prosecution claim under both the common law analysis and the Fourth Amendment analysis, the presence of probable cause precludes recovery for the claim.  See Wood, 323 F.3d at 881-82 (probable cause constitutes an absolute bar to § 1983 claims alleging malicious prosecution).

Officer Smith argues that he had probable cause to arrest Plaintiff, and therefore, she cannot prevail on her claim.  "[T]he standard for determining the existence of probable cause is the same under both Florida and federal law—whether a reasonable man would have believed probable cause existed had he known all of the facts known by the officer." Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998) (citations and quotations omitted).  "An officer, however, need not take every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person." Id. at 1436 (citations and quotations omitted).

Whether the facts in a case give rise to probable cause for an arrest depends on the elements of the offense.  See Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004).  In this case, Plaintiff was arrested for DUI.[1]  Under Florida law, a person is guilty of DUI if "the person is driving in actual physical control of a vehicle within this state and . . . [t]he person is under the influence of alcoholic beverages . . . when affected to the extent that the person's normal faculties are impaired."  Fla. Stat. § 316.193(1)(a); see also State v. Tagner, 673 So. 2d 57, 58 n.2 (Fla. Dist. Ct. App. 1996) (stating elements for DUI).  It follows that "[p]robable cause for a DUI arrest under section 316.193 is based upon a belief that the driver is under the influence of alcoholic beverages to the extent that his normal faculties are impaired."  State v. Kliphouse, 771 So. 2d 16, 21 (Fla. Dist. Ct. App. 2000).  "Probable cause for a DUI arrest must be based upon more than a belief that a driver has consumed alcohol; it must arise from facts and circumstances that show a probability that a driver is impaired by alcohol or has an unlawful amount of alcohol in his system."  Id. at 22.  "Once established, probable cause can then provide the means for measuring degrees of impairment or blood alcohol concentration through breath or blood testing."  Id.

The evidence in this case shows that Officer Smith observed Plaintiff crossing the fog line three times within one quarter mile, and upon approaching her vehicle, he saw that her face was flushed, her eyes were red, and there was an odor of alcohol

---

[1] Plaintiff argues in her Response that there was no probable cause for the charge of violation of a traffic control device.  Resp. at 7.  Although Officer Smith cited Plaintiff for violation of a traffic control device, the arrest was based on DUI.  See Compl. Aff. at 2; Police Report at 3. Therefore, Plaintiff's arguments regarding lack of probable cause to arrest her based on violation of a traffic control device are irrelevant.

coming from her breath.  When Officer Smith administered roadside sobriety tests, Plaintiff failed the tests.  Together, these facts were sufficient to establish probable cause for Plaintiff's arrest for DUI.

Plaintiff disputes that the traffic stop was valid in the first place.  See Resp. at 4-6.  Plaintiff argues that "An investigatory stop which is solely based upon 'inarticulate hunches' or 'unparticularized suspicion' is invalid."  Id. at 4 (citing Terry v. Ohio, 392 U.S. 1, 22, 27 (1968)).  However, Officer Smith only needed a founded suspicion that Plaintiff was driving under the influence to stop her, see State v. Carillo, 506 So. 2d 495, 497 (Fla. Dist. Ct. App. 1987) ("an officer can stop a driver based upon a founded suspicion that he is driving while under the influence"); see also State v. Davidson, 744 So. 2d 1180, 1180-81 (Fla. Dist. Ct. App. 1999) ("to effect a valid stop for DUI, the officer need only have a 'founded suspicion' of criminal activity."), and he had such a suspicion here.  Specifically, Officer Smith's observation that Plaintiff crossed the fog line three times within one quarter mile justified the stop.  See, e.g., United States v. Harris, 928 F.2d 1113, 1116 (11th Cir. 1991) (holding that stop was justified to determine if driver was driving under the influence where driver weaved into emergency lane twice during a one-mile stretch); Yanes v. State, 877 So. 2d 25, 26-27 (Fla. Dist. Ct. App. 2004) (holding that officer had reasonable suspicion for traffic stop, even in the absence of a traffic violation, where driver crossed fog line three times, regardless of whether driver endangered anyone in doing so).  Plaintiff states that she "was not crossing any white line," Delvalle Dep. at 13:21-22, but an officer can be justified in stopping a driver for weaving, even if the weaving was only within the lane, see Roberts v. State, 732 So. 2d 1127, 1128 (Fla. Dist. Ct. App. 1999) (holding that continuous

weaving, even if only within a lane, presented objective basis for suspecting that driver was under the influence, supporting a stop). Plaintiff also argues that "merely touching [ ] a dividing line does not give rise to a violation of a law where no traffic was affected and a valid stop requires particular unusual or erratic behavior." Resp. at 5. However, the cases Plaintiff cites in support of this argument concerned a separate statute than the one at issue here. Specifically, in Hurd v. State, 958 So. 2sd 600 (Fla. Dist. Ct. App. 2007), and Crooks v. State, 710 So. 2d 1041 (Fla. Dist. Ct. App. 1998), the drivers were stopped for violation of Florida Statutes §§ 316.155 and 316.089, each of which requires driving "with safety." Here, in contrast, Plaintiff was ultimately charged under Florida Statute § 316.074, violation of a traffic control device, which provides as follows:

> (1) The driver of any vehicle shall obey the instructions of any official traffic control device applicable thereto, placed in accordance with the provisions of this chapter, unless otherwise directed by a police officer, subject to the exceptions granted the driver of an authorized emergency vehicle in this chapter . . . .

Fla. Stat. § 316.074(1). Nothing in this statute requires that the driver's behavior created a safety concern, and Plaintiff cites no authority holding as much. Further, even without a traffic violation, as explained above, a stop is justified as long as the officer conducting the stop has a reasonable suspicion of impairment, and here, Officer Smith had reasonable suspicion that Plaintiff was driving under the influence. See Carillo, 506 So. 2d at 497.

Finally, "[e]ven in the absence of probable cause for such an arrest prior to the stop, [when] an officer [stops] a driver based upon a founded suspicion that [s]he is driving while under the influence[, subsequent] investigation may establish probable cause for arrest." Carillo, 506 So. 2d at 497. As Officer Smith notes, after initiating the

9

traffic stop based on his observation that Plaintiff was weaving, he observed Plaintiff's physical appearance and the odor of alcohol, and then she failed the roadside sobriety tests.  See Mot. at 9.  The combination of these factors was sufficient to establish probable cause for the arrest just as in Carillo, where the officer had probable cause for arrest when he stopped the defendant for weaving within his lane, then observed his demeanor, and then conducted the arrest.  See Carillo, 506 So. 2d at 497.  In her Response, Plaintiff disputes the validity of the roadside sobriety tests, arguing that the tests are not scientific evidence, and Plaintiff, a 54-year-old woman, had to perform these tests after she had been dancing at a discotheque in high heels that night.  Resp. at 8.  However, regardless of the scientific value of field sobriety tests, such tests can be a useful tool in making a decision to arrest.  See, e.g., State v. Meador, 674 So. 2d 826, 830 (Fla. Dist. Ct. App. 1996).  Further, Plaintiff's arrest was based not only on her performance on the tests, but also on Officer Smith's observation that she weaved while driving, she had a flushed face, glassy eyes, and slow and mumbled speech, and her breath smelled like alcohol.  Plaintiff also argues that her breath analysis and urinalysis results provided additional evidence that the roadside sobriety test results were inaccurate, but the breath analysis and urinalysis occurred after the arrest.  At the time that Officer Smith arrested Plaintiff, he did not know the results of these tests and therefore could not have based his probable cause determination on them.[2]

---

[2] In a section entitled "Other Facts to Support the Lack of Probable Cause," Plaintiff lists a number of other factors that she contends negate the existence of probable cause, including: (1) Officer Smith arrested Plaintiff based on his own observations, despite the presence of another officer at the scene of the stop; (2) Officer Smith observed the passenger in Plaintiff's car to be impaired as well; (3) Officer Smith wrote all of his notes on his hand; (4) There was no videotape of the stop or the

Therefore, the Court finds that Officer Smith had probable cause to arrest Plaintiff for DUI. As such, Plaintiff cannot prevail on her malicious prosecution claim, and the Court will enter summary judgment in Officer Smith's favor. See Wood, 323 F.3d at 881-82 (probable cause constitutes an absolute bar to § 1983 claims alleging malicious prosecution).

### B. Officer Smith Is Entitled To Qualified Immunity

Additionally, "[w]hen a government official is sued under a theory of direct liability, he may seek summary judgment on qualified immunity grounds." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263 (11th Cir. 2004). "Under qualified immunity analysis, the public official must first prove that he was acting within the scope

---

roadside sobriety tests; (5) There was no alcohol or drugs found in the vehicle; (6) Plaintiff had no trouble finding her licence, registration, and proof of insurance; (7) Plaintiff's driving pattern was safe; (8) It was clear that Plaintiff had been dancing for hours and it was late in the evening; (9) Plaintiff made clear that she suffered from high blood pressure and was provided medication while in custody.

       Plaintiff cites no authority requiring that an officer obtain the opinion of a fellow officer prior to conducting an arrest, write notes on paper rather than his hand, videotape the stop, or observe a driver having trouble finding her license, registration, or insurance paperwork prior to conducting an arrest. The fact that a search after the arrest did not reveal any alcohol or drugs in the car, see Smith Dep. at 34, was not a fact known to Officer Smith at the time of the arrest, nor has Plaintiff presented any authority for the fact that the absence of alcohol or drugs in the car necessarily negates probable cause. Similarly, Plaintiff's indication that she suffered from high blood pressure and was provided medication while in custody, after her arrest, also was not a fact known to Officer Smith at the time of the arrest. Finally, Plaintiff provides no reason that the safety of her driving and the facts that she was dancing for hours and it was late in the evening would negate probable cause.

       In sum, none of these factors change the fact that, at the time of the arrest, a reasonable man in Officer Smith's position, knowing all of the facts that Officer Smith knew, would have believed that probable cause existed. See Rankin, 133 F.3d at 1433. As mentioned above, Officer Smith was not required to "take every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person." Id. at 1436.

11

of his discretionary authority when the allegedly unconstitutional acts took place." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). "If, interpreting the evidence in the light most favorable to the plaintiff, the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." Holloman, 370 F.3d at 1264.

An officer acts within the scope of his discretionary authority when engaging in acts that "are of a type that f[all] within the employee's job responsibilities." Holloman, 370 F.3d at 1265. Here, Officer Smith was acting within the scope of his discretionary authority when he arrested Plaintiff because making an arrest is the type of acts that falls within a police officer's job responsibilities. See id. Therefore, the burden shifts to Plaintiff to show that Officer Smith is not entitled to qualified immunity. See id. at 1264.

To make this showing, Plaintiff "must satisfy a two prong test; [s]he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Holloman, 370 F.3d at 1264. The Fourth Amendment constitutional violation at issue in Plaintiff's malicious prosecution claim rests on her allegation that Officer Smith did not have probable cause for her arrest. Plaintiff cannot satisfy the test on this basis because, as explained above, Officer Smith had probable cause to arrest Plaintiff.

Further, qualified immunity applies even when no probable cause exists as long as there is arguable probable cause. See Jones v. Cannon, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999). Arguable probable cause for an arrest exists "where 'reasonable officers in the same circumstances and possessing the same knowledge as the

Defendant[ ] could have believed that probable cause existed to arrest' the plaintiff." Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004); Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).  In light of the information existing at the time of Plaintiff's arrest, reasonable officers in the same circumstances and possessing the same knowledge as Officer Smith could have believed that probable cause existed to arrest her.  Therefore, at the very least, Officer Smith had arguable probable cause for Plaintiff's arrest.  As such, he is entitled to qualified immunity from her malicious prosecution claim.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant Officer A. Smith's Motion for Summary Judgment [DE 39] is **GRANTED**.  The Court will enter a separate Final Judgment consistent with this ruling.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 14th day of June, 2012.

*[signature]*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF